Nelson R. KANDEL, etc., et al.

v.

Wayne Clayton SMOKER.

Civ. No. L–90–1809.

United States District Court,
D. Maryland.

Dec. 11, 1991.

Nelson R. Kandel and J.J. Condliffe, Baltimore, Md., for plaintiffs.

Charles N. Ketterman and Mary Alane Downs, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

LEGG, District Judge.

The Court has been called upon to decide whether plaintiffs should be granted leave to amend their complaint to add a claim for punitive damages. Defendant's opposition argues that the proposed Amended Complaint (Second Revised) should be denied because it fails to state a claim for punitive damages under Maryland law and would be futile as amended. For the reasons stated herein, plaintiffs' Motion for Leave to File Amended Complaint is hereby denied.

## I. FACTS

On July 3, 1991, plaintiffs filed the underlying complaint against defendant Wayne Clayton Smoker ("Smoker"). Plaintiff Nelson R. Kandel is the personal representative of the Estate of decedent Don Farley Reaves; plaintiff Lettie Reaves is decedent's widow. On March 6, 1990, the decedent died when his pick-up truck collided with a tractor-trailer truck driven by Smoker. Plaintiffs' complaint alleges that Smoker negligently caused the accident by pulling out of a parking lot onto U.S. Route 40, thereby blocking decedent's oncoming vehicle. The complaint states two causes of action: Count I is a survival action and Count II is an action for wrongful death.

Plaintiffs' original complaint requested actual and compensatory damages, but did not claim punitive damages. On October 24, 1991, plaintiffs filed a motion to amend their survival action under Count I by adding a claim for exemplary damages. The proposed Amended Complaint (Second Revised) alleges in pertinent part that:

Defendant was parked on a private parking lot more than twenty feet (20') from the roadbed. From this position

Defendant began moving and, without stopping and checking traffic, continued onto the roadway, blocking all lanes of traffic and escape for the decedent, Don Farley Reaves.

Defendant's vehicle was capable of turning directly onto the right shoulder or right lane of the roadway. Further, Defendant's vehicle was of such an unusual configuration so as to give rise to a higher decree [sic] of care than a standard tractor-trailer type combination.

Defendant's actions were less than what an inattentive driver would have taken in protecting safety and property.

That the Defendant's action in causing Don Farley Reaves' death through his negligence were of such an extraordinary and outrageous nature as to constitute wilful and wanton disregard for human life.

Defendant opposed this motion and the matter was fully briefed.[1] The Court has reviewed the parties' papers and has concluded that no hearing on plaintiffs' motion is necessary. Local Rule 105.6.

## II. DISCUSSION

### A. Standard of Review

■ Because defendant answered the original complaint on November 1, 1990, the plaintiffs may amend their complaint only through leave of this Court. *See* Fed. R.Civ.P. 15(a). As provided under Rule 15(a), leave to amend "shall be freely given when justice so requires." Nevertheless, the grant or denial of leave to amend is a matter that is within the discretion of the trial court. *See Justice v. Pennzoil Co.*, 598 F.2d 1339 (4th Cir.), *cert. denied*, 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979).

■ The purpose of Rule 15(a) is to "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." 6 Wright, Miller & Kane, Federal Practice & Procedure

§ 1471 (1990); *see also Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir.1987). If, however, "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Id.* at § 1487; *see also Joyner v. Abbott Laboratories*, 674 F.Supp. 185 (E.D.N.C.1987). Because plaintiffs' claim of punitive damages is insufficient under Maryland law, leave to amend will be denied.

### B. Analysis

■ Because the jurisdiction of this Court is founded upon diversity of citizenship and the accident occurred in Maryland, the law of this state applies. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The controlling Maryland case as to punitive damages in an automobile personal injury matter is *Smith v. Gray Concrete Pipe Co., Inc.*, 267 Md. 149, 297 A.2d 721 (1972).

In answering a question certified to it by the United States District Court for the Eastern District of Virginia, the Maryland Court of Appeals enunciated the standard by which the sufficiency of claims for exemplary damages arising out of automobile accidents are to be tested. *Smith*, 297 A.2d at 731, 732. The Court of Appeals held that the standard is as follows:

> We regard a "wanton or reckless disregard for human life" in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. Yet, it is both a functional and definitive test which, as we have noted, enjoys the virtue of having been frequently applied in this case. And if, as a test, it has been regarded as adequately stringent to

---

1. Defendant filed the following papers: Opposition to Plaintiffs' Motion for Leave to File Amended Complaint, Memorandum of Law in Opposition to Motion for Leave to File Amended Complaint.

Plaintiffs filed a reply memorandum: Reply to Opposition to Motion for Leave to Amend.

serve as a basis for possible imprisonment [for the crime of manslaughter by motor vehicle], then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions. We hold that it is the standard by which claims for exemplary damages arising out of motor vehicle operation are to be tested.

*Smith,* 297 A.2d at 731.

While the *Smith* Court acknowledged the availability of punitive damages in automobile tort cases, it cautioned that a complaint seeking exemplary damages must set forth facts which demonstrate the defendant's wanton or reckless disregard for human life. Finding that bald or conclusory allegations of recklessness were insufficient to state a claim for punitive damages, the Court of Appeals stated:

[s]ince we recognize that the adoption of such a rule frequently tends to appear invitational, a caveat is in order concerning the pleading and proof requirements which we shall impose in future cases. As we shall note later, the allegations relied upon here by plaintiffs are set forth in considerable detail in the complaint. Such particularity may well serve as a benchmark for pleading a case of exemplary damages, at least in motor vehicle cases. No bald or conclusory allegations of "wanton or reckless disregard for human life," or language of similar import, shall withstand attack on grounds of insufficiency.

*Smith,* 297 A.2d at 732.

The facts of *Smith,* as applied to the Court of Appeals' pleading requirements for exemplary damages, are instructive herein. In two of the five counts alleged in *Smith,* the plaintiffs asserted survival claims seeking punitive damages under theories of negligent entrustment (Count Three) and wrongful death based upon the negligent operation of the tractor-trailer truck (Count Four). Count Three was directed against Gray Concrete, which employed the driver (Edwards) and entrusted the tractor-trailer truck to him. Count Four was directed against both Edwards,

and, under a *respondeat superior* theory, against Gray Concrete. Considering the certified question under the standard applicable to a motion to dismiss,[2] the Court of Appeals found that exemplary damages were recoverable only under the negligent entrustment count.

In *Smith,* the complaint recited with specificity facts that, if established, would demonstrate Gray Concrete's reckless disregard for human life. The Court of Appeals observed that "[s]uch particularity may well serve as a benchmark for pleading a case of exemplary damages, at least in motor vehicle cases." *Smith,* 297 A.2d at 732.

The facts in *Smith,* as alleged in the complaint, included the following:

(1) Gray Concrete knew, or should have known, that its employee was an untrained, unqualified and incompetent driver;

(2) Gray knew that two strands of baling wire holding the hood were inadequate to prevent the hood from flying up and obscuring the driver's vision;

(3) Gray knew or should have known that the driver had a deplorable driving record;

(4) Gray knew or should have known that the truck was uncontrollable at any speed in excess of fifty miles per hour, but was being operated on an interstate highway with a seventy-mile-an-hour speed limit;

(5) The truck was loaded illegally over-width;

(6) The rear view mirrors of the truck were obstructed; and

(7) Gray knew or should have known that the vehicle's four-way flasher switch was inoperable and that there was no rear underride protection on the trailer.

Under the facts alleged as to Count Three, the Court of Appeals held that Gray's conduct reflected "a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others." *Smith,* 297 A.2d at 734.

---

2. *See* Fed.R.Civ.P. 12(b).

As such, the entrustment of the truck by Gray Concrete to Edwards evidenced a reckless disregard for human life.

In contrast, after reviewing Count Four, the negligent operation claim against Edwards, and his employer, the Court of Appeals ruled that the driver's conduct, while constituting sufficient negligence to support a claim for compensatory damages, did not rise to a level of wanton or reckless disregard for human life. The facts alleged in the negligent operation count included the following:

(1) Edwards undertook to drive the truck without first determining its mechanical condition;

(2) Edwards was not instructed by Gray Concrete as to how to evaluate the truck's condition in terms of safety;

(3) Both defendants were imputed with the knowledge that the truck was precariously overloaded;

(4) When the two strands of baling wire holding down the truck's hood gave way, and the hood flew up blinding Edwards, he switched lanes, stopping the truck in the middle lane of the freeway;

(5) The truck lacked emergency flashers.

(6) Edwards should have pulled the truck off the shoulder, where he could have stopped safely.

*Smith*, 297 A.2d at 733. Despite the pleading of these specific facts, the Court of Appeals found that there was an absence of "extraordinary or outrageous conduct on Edwards' part" sufficient to support a claim for punitive damages. *Id.* Instead, the *Smith* Court ruled that plaintiffs' allegations amounted to negligence on the part of Edwards, and that he had failed to respond properly under exigent circumstances; the facts did not, however, demonstrate a "wanton or reckless disregard for human life." *Id.* Exemplary damages therefore were not recoverable from either the driver or his employer under Count Four.

■ Cases decided in Maryland after *Smith* continue to demonstrate the egregious circumstances that must be pleaded with specificity by a plaintiff in order to state a sufficient claim for punitive damages in motor vehicle cases. *See, e.g., Nast v. Lockett,* 312 Md. 343, 539 A.2d 1113 (Md.1988); *Baublitz v. Henz,* 73 Md.App. 538, 535 A.2d 497 (Md.App.1988).

In *Nast*, the Court of Appeals stated that "[t]he discretion to award punitive damages is an awesome power to be granted in negligence cases only where egregious or outrageous circumstances require it". *Nast,* 539 A.2d at 1126. Seeking to distinguish between ordinary and gross negligence, the *Nast* Court determined that:

[i]t is not reckless driving that allows punitive damages; it is the reckless disregard for human life. Reckless driving may be a strong indicator, but unless it is of an extraordinary or outrageous character, it will ordinarily not be sufficient.

539 A.2d at 1117. Such a distinction also is relevant herein.

After considering plaintiffs' proposed Amended Complaint (Second Revised) within the context of *Smith* and its progeny, the Court finds that the complaint does not present allegations of more than ordinary negligence on the part of Smoker. There is no suggestion therein that Smoker's alleged conduct was founded upon a wanton or reckless disregard for human life. Nor do plaintiffs set forth specific facts alleging that Smoker's conduct was of such an extraordinary or outrageous character that this state of mind may be imputed to him. *See, e.g., Nast,* 539 A.2d at 1117. While negligent behavior is clearly alleged, plaintiffs simply have not framed a showing of Smoker's state of mind sufficient to overcome the stringent threshold for punitive damages. *Id.*

Although the allowance of punitive damages normally rests in the sound discretion of the trier of fact, whether the trier of fact[3] is to be permitted to exercise that discretion is a matter of law for this Court to decide. 539 A.2d at 1116. Plaintiffs'

---

**3.** In this case, the plaintiffs have prayed a jury trial rather than a bench trial, thus the jury shall operate as the trier of fact.

proposed amended complaint sets forth a claim for punitive damages that is legally insufficient under Maryland law. Thus, the claim would never reach the jury for consideration. Accordingly, plaintiffs' Motion for Leave to File Amended Complaint is hereby denied.

It is so ORDERED.